## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
_____

LCI INTERNATIONAL,

    Plaintiff-Appellant,

Vs.

**MARGO SWARTWOOD d/b/a
THERMAL SASH,**

    Defendant-Appellee.

Gibson Circuit No. 7723
C.A. No. W1999-02312-COA-R3-CV

**FILED**

**January 13, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

## FROM THE GIBSON COUNTY CIRCUIT COURT
## THE HONORABLE DICK JERMAN, JR., JUDGE

David A. Riddick of Jackson
For Appellant

No Appearance By Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This appeal involves a suit on open account tried by the trial court without a jury. Plaintiff-appellant, LCI International (LCI) appeals the judgment of the trial court for defendant-appellee, Margo Swartwood.

LCI's complaint, filed May 23, 1997, alleges that Swartwood is indebted to it in the sum of $19,633.32 on open account for long distance services provided over a period of time.

Swartwood's answer denies that she owes the debt and avers that any debt owed LCI is the debt of a corporation, Thermal Sash of Trenton, Inc.[1] She avers that she dealt with LCI in her representative capacity as vice president of Thermal Sash of Trenton, Inc.

A nonjury trial was held November 30, 1998. Sara Rutland, on behalf of plaintiff, testified that she is presently employed by Quest Communications and explained that LCI International acquired ATS Network Communication in 1994 and then subsequently in 1998 Quest acquired LCI. The business of the company is to provide long distance service, and in 1994 and all pertinent times involving Swartwood, she worked for LCI as an account manager. In this position, she had a customer base of approximately 400 accounts and Margo Swartwood was one of her customers. She stated that Swartwood was a customer of ATS as acquired by LCI. She testified that she is familiar with the books, records, and accounts of the company and Exhibit 1 was admitted showing the balance due on the account. The witness then introduced as an exhibit to her testimony a document titled "Service Agreement." This document is a printed form with the company name as Thermal Windows and Doors, address: 108 East Eaton, Trenton, Tennessee. The document, dated April 19, 1994, is signed by Margo Swartwood designated as "owner." The next document introduced into evidence is entitled "Letter of Authorization for Change," and apparently deals with a changing of the 800 service provided. The document is dated July 14, 1994, and shows the customer signature as M. Swartwood at 108 East Eaton, Trenton, Tennessee. The next document introduced into evidence is entitled ATS Network Communications, Inc., Term Agreement, and this is dated October 4, 1994. The document indicates the

---

[1] As noted later in this Opinion, the only charter ever issued is for a corporation named "Thermalsash of Trenton, Inc."

company name as "Thermal Windows and Doors" and shows Margo Swartwood as the purchaser's authorized signature, and under that another signature of Margo Swartwood.

The next exhibit introduced is a LCI International Worldwide Telecommunication Term Agreement. This agreement is dated August 26, 1996, and shows the company name as Thermal Windows and shows the signature of Margo Swartwood for purchaser's authorized signature. The witness testified that in her dealings with Ms. Swartwood she never at any time indicated that there was a corporation involved or that she was acting in any capacity except as owner of the business for which she was dealing.

Margo Swartwood was called as a witness by the plaintiff and testified that the signatures on the exhibits were her signatures. She also testified that the documents were filled out when she signed them and that, "I would never sign a blank statement." The charter of a corporation titled, "Thermalsash of Trenton, Inc." was introduced as an exhibit. The charter is dated October 18, 1994, and was recorded in the register's office of Gibson County December 12, 1994.

At the conclusion of the proof, the trial court ruled that there was proof of an outstanding debt in the amount of $19,633.35 owed by "the business known as Thermalsash of Trenton but not by the defendant Margo Swartwood." LCI has appealed, and the only issue for review is whether the evidence preponderates against the finding of the trial court.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

It is undisputed that Swartwood signed the various agreements initiating and maintaining the accounts. All the documents are signed without any designation that she was acting in any representative capacity. The initial agreement designates her as owner of "Thermal Windows and Doors," and there is nothing to indicate that such a business is a corporation. Moreover, it is undisputed that at all pertinent times, when

3

the agreement was executed and during the time the account was accruing, the corporation, Thermalsash of Trenton, Inc., was not in existence. Ms. Swartwood's testimony that she signed in a representative capacity for such a corporation is incredible. "Whether a person signing a contract intended to do so as an individual or as the representative of another should, where possible, be determined from the contract's language." **Bill Walker & Associates, Inc. v. Perry**, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989). The concern is not with the parties' state of mind at the time they entered the contract; therefore, subjective, uncommunicated intentions are not considered. **Id.**

It is clear to this Court from the proof presented in the record that the defendant signed the agreement to establish the account as an individual and is liable thereon. The evidence preponderates against the finding of the trial court to the contrary.

Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court with instructions to enter judgment for plaintiff in the amount of $19,633.35, plus prejudgment interest. Since the record does not contain proof as to the date of delinquency of the account, prejudgment interest shall be calculated from the date suit was filed until the date of entry of judgment in this Court. Costs of the appeal are assessed against the appellee, Margo Swartwood.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**DAVID R. FARMER, JUDGE**


_____
**HOLLY KIRBY LILLARD, JUDGE**

4